UNITED STATES, Appellee,

v.

Donald R. HARRELL, 436 02 3770, Lance Corporal (E-3), U. S. Marine Corps, Appellant.

NCM 77 1628.

U. S. Navy Court of Military Review.

Sentence Adjudged 14 April 1977.

Decided 28 April 1978.

Commander Carl H. Horst, JAGC, USN, Appellate Defense Counsel Lieutenant Lawrence W. Muschamp, JAGC, USNR, Appellate Defense Counsel.

Lieutenant Michael C. Farrow, JAGC, USNR, Appellate Government Counsel. Lieutenant Commander N. P. DeCarlo, JAGC, USN, Appellate Government Counsel.

Opinion

EN BANC.

GLADIS, Judge:

The accused was convicted at a special court-martial bench trial of six unauthorized absences totaling about 2 weeks, in violation of Article 86, UCMJ, 10 U.S.C. § 886, and sentenced to a bad-conduct discharge, confinement at hard labor for 2 months, forfeiture of $100 per month for 3 months, and reduction to pay grade E–1. Evidence of four prior nonjudicial punishments was considered by the military judge in determining an appropriate sentence. The convening authority approved the sentence and probationally suspended the discharge for 6 months. The officer exercising general court-martial jurisdiction approved the sentence as approved and partially suspended by the convening authority. Subsequently, vacation proceedings were initiated and the officer exercising general court-martial jurisdiction vacated the suspension.

Appellate defense counsel originally submitted the case without specific assignment of error. In light of the subsequent decision of the Court of Military Appeals in *United States v. Booker*, 5 M.J. 238 (C.M.A. 1977), to the effect that evidence of prior nonjudicial punishments or summary courts-martial is inadmissible unless the individual has been advised of his right to

confer with an independent counsel before he waives his right to demand trial by court-martial, we requested briefs on the applicability of that decision to this case. We granted the Government's motion that the case be considered *en banc.* The accused claims that the evidence of the prior nonjudicial punishments was improperly admitted and also contends that the vacation of the suspension of the bad-conduct discharge is defective.

The first issue is whether *Booker* is retroactive. We hold that the rule in *Booker* is applicable only to cases tried after 11 October 1977, the date of the *Booker* decision, in which evidence of prior nonjudicial punishment or summary courts-martial is introduced, because the purpose of the exclusionary rule there enunciated will not be effectuated by retroactive application. We find the vacation to be defective and set it aside because it is based in part upon a recommendation predicated on matters not contained in the record which the accused has not been given the opportunity to rebut.

I

*Retroactivity of Booker*

■ The Constitution neither prohibits nor requires retrospective effect for decisions expounding new rules affecting criminal trials. *Desist v. United States,* 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969). Unless the purpose of the new rule is to overcome an aspect of the criminal trial that substantially impairs its truth-finding function, and so raises serious questions about the accuracy of guilty verdicts in past trials, the criteria guiding resolution of the retroactivity question implicate: (a) the purpose to be served by the new standards; (b) the extent of the reliance by law enforcement authorities on the old standards; and (c) the effect on the administration of justice of new standards.[1] *Adams v. Illinois,* 405 U.S. 278, 92 S.Ct. 916, 31 L.Ed.2d

1. The Supreme Court has declined to apply these criteria in certain cases which do not involve exclusionary rules of evidence. *See*

202 (1972); *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). *See United States v. Jackson,* 3 M.J. 101 (C.M.A. 1977).

■ Initially, the accused contends that no case or controversy exists as to the retroactive application of the *Booker* exclusionary rule because the Secretary of the Navy has declared in a message to all Navy activities that cases not finally reviewed prior to 11 October 1977 should be reviewed in accordance with the *Booker* decision. SECNAV 012307Z Dec. 1977, ALNAV 073/77. In view of the *caveat* in that message (*i. e.,* that it is for information and guidance to personnel associated with military justice matters and not intended to infringe upon or preclude in any manner the independent judgment of military judges or others associated with military justice), it is clear that the intent of the message is not to preclude us from exercising the statutory duty imposed by Article 66, UCMJ, 10 U.S.C. § 866, to determine whether the findings and sentence in the case before us are correct in law and fact. The portion of the message relied upon by the accused was apparently intended merely as guidance in cases pending on direct review, in an effort to avoid reversible error, not as a rule of evidence applicable at trial.

The accused argues that inequity will result if initial reviewing authorities apply the *Booker* rule to cases before them while this Court does not. The Supreme Court rejected a similar argument in *Stovall v. Denno, supra,* at 301, 87 S.Ct. 1967, noting that, although inequity results when the *Stovall* criteria militate against retroactive application of a rule and its benefit is accorded to the litigants at the trial at which it is announced, but not to other litigants similarly situated in the trial or appellate process who have raised the issue, the principles of sound decision making dictate such a result.

*Robinson v. Neil,* 409 U.S. 505, 93 S.Ct. 876, 35 L.Ed.2d 29 (1973), and cases cited therein.

■ The accused also contends that a 1973 memorandum [2] issued by the Secretary of Defense bestowed upon service-members the right to the advice of counsel prior to the imposition of nonjudicial punishment. We do not construe the language in the memorandum, directing the Secretaries of the military departments to revise nonjudicial punishment procedures to require the availability of adequate legal advice to an accused prior to imposition of such punishment, to require mandatory advice to an accused that he is entitled to consult with counsel before punishment is imposed. Our construction of that language is supported by its interpretation by the Secretary of the Navy in the implementation of the directive and the subsequent acquiescence by the Secretary of Defense.[3] Therefore, we must decide the issue of retroactivity on the merits.

The *Manual for Courts-Martial, United States, 1969* (Revised edition), paragraph 75 *b*, authorizes, subject to certain limitations, the introduction of evidence of previous convictions by court-martial during presentencing proceedings. Paragraph 75*d*, authorizes, under regulations of the Secretary concerned, introduction, prior to sentencing, of personnel records maintained in accordance with departmental regulations which reflect the past conduct and performance of the accused. In *United States v. Johnson*, 19 U.S.C.M.A. 464, 42 C.M.R. 66 (1970), the Court of Military Appeals approved the use, pursuant to this provision by a court-martial deliberating on an appropriate sentence, of records of nonjudicial punishment imposed under Article 15, UCMJ, 10 U.S.C. § 815.

In *United States v. Alderman*, 22 U.S.C.M.A. 298, 46 C.M.R. 298 (1973), the Court of Military Appeals held, in effect, that the rule in *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), that, absent a knowing and intelligent waiver, no

person may be imprisoned for any offense unless he was represented by counsel at trial, applied to summary courts-martial, and, consequently, previous convictions by summary court-martial were inadmissible at subsequent trials when they had been obtained at proceedings at which the accused was improperly denied counsel.

In *Middendorf v. Henry*, 425 U.S. 25, 96 S.Ct. 1281, 47 L.Ed.2d 556 (1976), rejecting the conclusions in *Alderman*, the Supreme Court held that the Congressional determination that counsel is not required in summary courts-martial violates neither the Sixth nor the Fifth Amendment to the U.S. Constitution, because a summary court-martial is not a criminal prosecution for purposes of the Sixth Amendment and, upon analysis of the interests of the individual and of the regime to which he is subject, the due process of law guaranteed by the Fifth Amendment does not embody a right to counsel at such a proceeding.

Article 15, UCMJ, 10 U.S.C. § 815, which establishes nonjudicial punishment as an administrative method of dealing with minor offenses, provides that, except in the case of a service member attached to or embarked in a vessel, such punishment may not be imposed upon a service member who has demanded trial by court-martial in lieu of nonjudicial punishment. Article 20, UCMJ, 10 U.S.C. § 820, provides that no person may be brought to trial before a summary court-martial if he objects.

■ In *Booker*, the Court of Military Appeals held that, because the consequences of a decision to accept an Article 15 or a summary court-martial disciplinary action involve due process considerations (that is, waiver of a right to a full adversary criminal proceeding with its attendant Fifth and Sixth Amendment protections) and only a legally trained person can supply the requisite quantum of information necessary for

2. SECDEF memo of 11 Jan 1973, Subj: Report of the Task Force on the Administration of Military Justice in the Armed Forces.

3. See JAGMAN § 0101d(1).

an informed decision, an individual must be told of his right to confer with counsel before he opts for disposition at the Article 15 or summary court-martial level. In order to give some meaning to the due process requirement that the individual be advised of his rights, the Court provided for the exclusion at subsequent courts-martial of evidence of summary courts-martial or nonjudicial punishment, absent a showing that the required advice had been given.

Examining the *Stovall* criteria and weighing the purpose of the new rule, the prior reliance on the *United States v. Johnson* decision, *supra,* and the effect on the administration of justice of retroactive application of the new rule, we decline to apply *Booker* retroactively. The retroactive application of the rule will not effectuate or advance its purpose. *Compare Williams v. United States,* 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971); *Desist v. United States, supra; Stovall v. Denno, supra; Johnson v. New Jersey,* 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966); *Linkletter v. Walker,* 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). Retroactive application would not have the justifiable effect of curing errors committed in disregard of Constitutional rulings already clearly foreshadowed. First, *Alderman, supra,* gave no manifest forewarning that advice of counsel would someday be required in connection with summary courts-martial at which confinement is not adjudged or at nonjudicial punishments. Second, *United States v. Johnson* approved consideration of prior nonjudicial punishment at sentencing proceedings in subsequent trials, noting that no court has held that there is a right to counsel for Article 15 proceedings. Finally, *Middendorf* rejected *Alderman,* holding counsel is not required at summary courts-martial. Thus, records of prior summary courts-martial and nonjudicial punishments were admitted at trials prior to the *Booker* decision in good faith reliance on the law enunciated in these earlier cases.

■ The exclusionary rule in *Booker* is analogous to the exclusionary rule announced in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), which the Supreme Court applied only to trials begun after the decision was announced. *See Johnson v. New Jersey, supra.* In effect, both *Miranda* and *Booker* involve advice to an accused that he is entitled to confer with counsel before he elects to exercise or waive an important right. *Miranda* is primarily designed to assure that the person who responds to interrogation while in custody does so with intelligent understanding of his right to remain silent and of the consequences which may flow should he relinquish that right. *Booker* is designed to assure that the person who is afforded a choice between a criminal adversary proceeding and a disciplinary hearing understands the legal ramifications and is able to make an informed decision. *Miranda* involves waiver of a Constitutional right. *Booker* deals with waiver of a statutory right in which due process considerations are involved. *Johnson v. New Jersey,* which gave only prospective effect to the *Miranda* rule mandating advice concerning the right to counsel, is distinguishable from *Burgett v. Texas,* 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967) which applied *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) retroactively. *Gideon* gives all accused the right to be represented by counsel at criminal prosecutions. The denial of counsel at the critical stage of a criminal trial or other proceeding at which an accused is entitled to be represented by counsel may be basically unfair and a conviction based upon such a proceeding invalid. Nevertheless, failure to give an accused advice concerning his right to consult with counsel in every instance in which he is entitled to do so does not necessarily substantially impair truth-finding functions and therefore raise serious questions about the accuracy of guilty verdicts. *See Johnson v. New Jersey, supra. Also see Stovall v. Denno, supra,* in which the Supreme Court declined to apply retroactively rules excluding evidence of identification obtained by exhibiting the accused to witnesses before trial in the absence of counsel. *Cf. Williams v. United States, supra.* A sum-

mary court-martial or nonjudicial punishment proceeding at which an accused is not afforded representation by counsel is not inherently unfair nor does it violate basic concepts of ordered liberty. *Middendorf v. Henry, supra.*[4]

Rules are given retroactive effect where the very integrity of the fact-finding process is affected by failure to do so and where they avert the clear danger of convicting the innocent. *Johnson v. New Jersey, supra.* Neither the introduction of a confession, obtained without advice concerning the right to counsel before waiving the Constitutional right of self-incrimination, nor the introduction of evidence of an identification, obtained by exhibiting the accused to witnesses in the absence of counsel, substantially impairs the truth-finding functions of a trial. Similarly, in determining an appropriate sentence, consideration of prior disciplinary hearings involving minor offenses, at which the accused was not advised of his right to consult with counsel before waiving his right to demand a criminal advisory proceeding, does not deprive an accused of a fair sentencing proceeding. The consequences of failure to give the advice required by *Miranda* may be far more serious than the consequences of failure to give *Booker* advice. The latter can only result in the aggravation of punishment within limited parameters or, under certain circumstances, the imposition of a bad-conduct discharge which would not be otherwise authorized.

Balancing the purpose of the rule announced in *Booker* against the prior reliance upon *United States v. Johnson* and *Alderman* and the impact retroactive application of the new rule would have on the administration of justice, we conclude that the rule should not be given retroactive effect. Retroactive application will neither effectuate nor advance the purpose of the rule, which is to give meaning to the newly discovered right to consult with counsel prior to the imposition of nonjudicial punishment, in instances in which an individual has a statutory right to demand trial by court-martial in lieu of such punishment, or prior to trial by summary court-martial, where the accused has the right to demand an adversary criminal proceeding in lieu of trial by summary court-martial. In justifiable reliance on the decisions in earlier cases, evidence of prior nonjudicial punishment and summary courts-martial has been considered at numerous trials in determining appropriate sentences without a showing that the accused was given the advice now required by *Booker.* Retroactive application would upset the sentences in many of these cases. There is no sound basis for distinguishing between cases which have been finally reviewed and those which are pending on direct review. Application of the new rule to cases which are tried after the date of the *Booker* decision is appropriate because trial courts are no longer justified in relying on the earlier decisions and such application will have no appreciable impact on the administration of justice. Therefore, we reject the Government's contention that the new rule should not apply to nonjudicial punishments imposed and summary courts-martial tried before the date of the *Booker* decision which are introduced at sentencing proceedings at trials held after the date of the *Booker* decision.[5] We hold that the rule announced in *United States v. Booker, supra,* is applicable only to cases tried after 11 October 1977, in which evidence of prior nonjudicial punishments or summary courts-martial is introduced.

---

4. Thus the determination of Congress that service members attached to or embarked in a vessel do not have the right to demand trial by court-martial in lieu of nonjudicial punishment imposed under Article 15 is a legitimate exercise of its Constitutional authority to regulate the land and naval forces. *See United States v. Lecolst,* 4 M.J. 800 (N.C.M.R.1978). *Cf. Middendorf v. Henry, supra.*

5. *But see United States v. Peltier,* 422 U.S. 531, 95 S.Ct. 2313, 45 L.Ed.2d 374 (1975), in which an exclusionary rule was not applied to evidence obtained in searches before the rule was imposed, but introduced at trials held after the rule was announced. In *Peltier,* however, a contrary result would have had a substantial adverse impact on the administration of justice.

Thus, the evidence of four prior nonjudicial punishments, which was introduced in this case as evidence of the character of the accused's prior service to aggravate the penalty within the parameters prescribed in the Table of Maximum Punishments, MCM, 1969 (Rev.), para. 127c, for the offenses of which he stands convicted, was properly considered by the court in determining an appropriate sentence.

## II

### Legality of Vacation Proceedings

■ In a supplementary assignment of error, the accused contended the purported vacation of the suspension of his bad-conduct discharge violated the standards set forth in United States v. Bingham, 3 M.J. 119 (C.M.A.1977), and United States v. Rozycki, 3 M.J. 127 (C.M.A.1977), because the officer exercising general court-martial jurisdiction did not state in his action vacating the suspension his reasons or the evidence relied on. Appellate government counsel has subsequently obtained an affidavit from that officer citing his reasons and the evidence he relied on. At our request, appellate government counsel has also ascertained that the officer exercising special court-martial jurisdiction personally conducted a hearing into the alleged violation. In an additional supplementary assignment of error the accused now asserts that the suspension of the discharge was improperly vacated because he was not afforded a fair hearing or resolution of the question of whether his probation should be revoked. We find some merit in his contention. Among other reasons, the officer exercising general court-martial jurisdiction based his decision to vacate the suspension of the discharge upon the recommendation of the officer exercising special court-martial jurisdiction, which was based in part on the past record of the accused, including his actions and conduct since his release from confinement. The report of vacation proceedings indicates that the character of the accused's service while on probation, prior to his alleged violation of probation, was poor because incidents occurred after his release from confinement. There is no showing either that the incidents were matters of record or that the accused was given an opportunity to rebut these adverse matters. A vacation based upon a recommendation predicated on matters not contained in the record which the probationer has not been afforded the opportunity to rebut is invalid. United States v. Rozycki, supra. Therefore, the vacation in this case is invalid.

Accordingly, the supplementary action of the officer exercising general court-martial jurisdiction, dated 9 August 1977, vacating the suspension of the execution of that portion of the sentence adjudging a bad-conduct discharge, is set aside. The findings of guilty and sentence as approved and probationally suspended on review below prior to the vacation proceeding are affirmed.

A determination of whether a new vacation proceeding is warranted and practicable is authorized by a general court-martial authority to be designated by the Judge Advocate General. In the event that a new vacation proceeding is determined to be warranted and practicable, the proceeding must be completed within a reasonable period of time. United States v. Rozycki, supra, at 129.

Chief Judge CEDARBURG, Senior Judge DUNBAR, and Judges ROOT, BAUM, GREGORY and GRANGER concur.

NEWTON, Senior Judge (Concurring in Part/Dissenting in Part):

I concur in the majority's disposition of the issue concerning vacation of the suspended sentence. Such action did not meet requirements set forth in United States v. Rozycki, 3 M.J. 127 (C.M.A.1977).

I disagree with the majority decision concerning the non-retroactive application of the rule of evidence enunciated in United States v. Booker, 5 M.J. 238 (C.M.A.1977).

My reasons are set forth in the dissenting opinions in *United States v. Lecolst,* 4 M.J. 800 (N.C.M.R.1978) and in *United States v. Penn,* 4 M.J. 879 (N.C.M.R.1978). The Secretary of the Navy made the *Booker*-rule retroactive as he was authorized to do. I find no merit in unequal application of the rule during post-trial—appellate processing of the cases before this Court. As a consequence I must dissent.

AND IT IS FURTHER ORDERED, that this case be, and the same is hereby, remanded to the Judge Advocate General of the Navy for proceedings not inconsistent with the majority opinion above.