UNITED STATES, Appellee,

v.

Larry D. BOOKER, Private U. S. Marine Corps, Appellant.

No. 33,002.

NCM 76–1088.

U. S. Court of Military Appeals.

Oct. 11, 1977.

FLETCHER, Chief Judge:

The appellant was convicted of assault and battery in violation of Article 128, Uniform Code of Military Justice, 10 U.S.C. § 928. His sentence to a bad conduct discharge, confinement at hard labor for 2 months, and forfeiture of $240 pay per month for 2 months, and the findings of guilty were approved by the convening authority and the United States Navy Court of Military Review. We granted the petition for review to determine whether a bad conduct discharge was an authorized punishment in this case. The appellant specifically contends that two prior summary courts-martial "convictions" were improperly utilized by the trial judge to sustain an increase in the authorized punishment under the provisions of Section B, paragraph 127c, Manual for Courts-Martial, United States, 1969 (Revised edition). The foundation for his argument is structured on the decision of the Supreme Court in *Middendorf v. Henry*, 425 U.S. 25, 96 S.Ct. 1281, 47 L.Ed.2d 556 (1976), wherein the majority held that summary courts-martial proceedings were not criminal prosecutions within the meaning of the Sixth Amendment.[1]

The *Middendorf* majority, in resolving the issue of the right to counsel at a summary court-martial, erected certain pylons to support its conclusion that neither the Sixth Amendment, the due process guarantees of the Fifth Amendment, nor the decision in *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), compelled the presence of counsel at what it characterized as a disciplinary hearing.[2] It concluded that summary courts-martial are generally limited to conduct not declared criminal in the civilian community; in other words, military offenses.[3] These were characterized by the Court as relatively minor

*Commander A. W. Eoff, III, JAGC, USN,* was on the pleadings for Appellant, Accused.

*Lieutenant Colonel P. N. Kress,* USMC, and *Captain . Charles P. Mackin, Jr.,* USMCR, were on the pleadings for Appellee, United States.

1. 425 U.S. 25, 33–40, 96 S.Ct. 1281, 47 L.Ed.2d 556 (1976).

2. This is clearly one of the points in which the majority and the concurring justice in *Middendorf* were in precise agreement. *See also* note 3.

3. 425 U.S. at 38–39, 96 S.Ct. 1281 (1976); *see Parker v. Levy,* 417 U.S. 733, 749–51, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974).

offenses,[4] with discipline [5] being the obtainable result.[6] The majority determined that the "distinctive nature of military life and discipline" [7] required an expedient proceeding whereby command could function and carry out its mission, and looked to Article 27 [8] as clearly indicating the "determination of Congress, made under its authority to regulate the land and naval forces, U.S. Const., Art. I, § 8, that counsel should not be provided in summary courts-martial." [9] In reliance upon *Gagnon v. Scarpelli*, 411 U.S. 778, 787, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), the majority concluded that

> presence of counsel will turn a brief, informal hearing which may be quickly convened and rapidly concluded into an attenuated proceeding which consumes the resources of the military to a degree

which Congress could properly have felt to be beyond what is warranted by the relative insignificance of the offenses being tried.[10]

It drew a parallel between the revocation proceeding of *Gagnon* and the juvenile hearings involved in *Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), to conclude that as long as the summary court-martial hearing measured "up to the essentials of due process and fair treatment," [11] it was not mandated "that the hearing to be held must conform with all of the requirements of a criminal trial or even an administrative hearing." [12]

■■■ We, with proper deference to the Supreme Court,[13] now must undertake the task of examining the present military

---

4. Obviously the *Middendorf* majority attached great significance to the ceilings on punishments set forth in Article 20, Uniform Code of Military Justice, 10 U.S.C. § 820. Yet, Mr. Justice Rehnquist conceded that, as argued by the dissent, and as, in fact, present in this case, serious offenses (in this instance the appellant had been tried for aggravated assault at a summary court-martial) indeed can be and are tried at this level. 425 U.S. at 40 n. 17, 96 S.Ct. 1281.

5. The Court, as do we, had to consider the term "discipline" as involving other than criminal punishment.

6. 425 U.S. at 43–44, 96 S.Ct. 1281.

7. *Id.* at 42 n. 19, 96 S.Ct. at 1291.

8. UCMJ, 10 U.S.C. § 827.

9. 425 U.S. at 43, 96 S.Ct. at 1291. The majority in footnote 21 (*id.* at 44–45, 96 S.Ct. 1281) commented on Congress' failure on two separate occasions to modify Article 20.

10. *Id.* 425 U.S. at 45, 96 S.Ct. at 1292.

11. 383 U.S. 541, 562, 86 S.Ct. 1045, 1057, 16 L.Ed.2d 84 (1966).

12. *Id.* Although the majority cited *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), in conjunction with *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), to support its conclusion, it is clear that the decision in *Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), and its concept of parens patriae is a primary judicial underpinning of the majority's reasoning, especially in consideration of the limited class of

service personnel which is subject to trial by a summary court-martial under the provisions of Article 20.

13. *See United States v. Sims*, 25 U.S.C.M.A. 290, 54 C.M.R. 806, 2 M.J. 109 (1977). We are not unaware of the criticism of this decision from the commentators—*see Military Law— Right to Counsel at a Summary Court-Martial: Middendorf v. Henry*, 55 N.C.L.Rev. 300 (1977); *Military Justice—Right to Counsel—Servicemen Tried Before Summary Courts Have No Constitutional Right to Counsel. Middendorf v. Henry*, 425 U.S. 25, 96 S.Ct. 1281, 47 L.Ed.2d 556 (1976), 54 Tex.L.Rev. 1471 (1976), and the materials cited therein, especially in light of the fact that the summary court-martial officer is a lay person (*see* Articles 16 and 26, UCMJ), and under the provisions of paragraph 79 of the Manual for Courts-Martial, United States 1969 (Revised edition), seemingly occupies a role inconsistent with the guidelines set forth by the Supreme Court in *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). *See United States v. Culp*, 14 U.S.C.M.A. 199, 218, 220, 33 C.M.R. 411, 430, 432 (1963) (Ferguson, J., concurring in the result). We have recently commented on the problems attendant with the lay judge in general, and the proposition advanced by Judge Ferguson in *Culp* that this lay person may often feel more of a loyalty to the military than to the interests of the individual soldier whose conduct he may privately find undesirable. *See United States v. Payne*, 3 M.J. 354–56, n. 6, 9 (C.M.A.1977).

It is these factors coupled with our evaluation of the overall ramifications of *Middendorf* which compel this decision as to the use of summary courts-martial.

practice as to summary courts-martial, and determine the ramifications of *Middendorf* on military trial procedure. The two prior

summary courts-martial of Private Booker introduced to trigger the "escalator clause"[14] of Section B of paragraph 127c,

14. Section B provides in pertinent part:

*Permissible additional punishments.* If an accused is found guilty of an offense or offenses for none of which dishonorable discharge is authorized, proof of three or more previous convictions adjudged by a court during the year next preceding the commission of any offense of which the accused stands convicted will authorize dishonorable discharge and forfeiture of all pay and allowances and, if the confinement otherwise authorized is less than one year, confinement at hard labor for one year. In computing the one-year period preceding the commission of any offense, periods of unauthorized absence as shown by the findings in the case or by the evidence of previous convictions should be excluded. See 75*b* (2) as to further limitations on consideration of previous convictions.

If an accused is found guilty of an offense or offenses for none of which dishonorable or bad-conduct discharge is authorized, proof of two or more previous convictions adjudged by a court during the three years next preceding the commission of any offense of which the accused stands convicted will authorize bad-conduct discharge and forfeiture of all pay and allowances and, if the confinement otherwise authorized is less than three months, confinement at hard labor for three months. See 15*b* concerning the limitations on the power of special courts-martial to adjudge a bad-conduct discharge and forfeitures and 75*b* (2) for limitations on consideration of previous convictions.

We must reject the contentions of the appellate defense counsel that *Middendorf* does not foreclose us from requiring counsel at these hearings which the Supreme Court has held to be disciplinary actions rather than criminal proceedings. However, the decision in no manner supports the rather "Catch-22" logic of the government that summary courts-martial are not criminal proceedings for purposes of the Constitution, but somehow revert to that status for purposes of triggering the "escalator clause" set forth above, or as evidence of prior convictions for either impeachment or aggravation of the imposable sentence. Our reading of *Middendorf* convinces us that these counselless disciplinary hearings are not criminal convictions for any purpose.

We do not feel that such an interpretation is at odds with the powers of the President under Article 36 to prescribe rules of procedure including modes of proof. The Supreme Court in *Middendorf* simply recharacterized the summary court-martial from a criminal proceeding to a disciplinary hearing. We cannot ignore this distinction in interpreting the term "conviction" for the purposes of Section B of para-

graph 127*c, see United States v. Johnson*, 19 U.S.C.M.A. 464, 42 C.M.R. 66 (1970), or other portions of the Manual.

The dissenting judge has structured his entire position that *Middendorf* did not change the character of the summary court-martial from a criminal prosecution to a disciplinary hearing, and hence, does not require the conclusions we have reached, on the assumption that a valid analogy can be drawn between the two-tiered court system prevalent in certain state jurisdictions and the statutory scheme present in the military under Articles 15–20, UCMJ. We, with due respect, find critical distinctions between the two which persuade us that the position is unsound.

The concept of the two-tiered systems mentioned by the dissenting judge was originally addressed by the Court in *Colten v. Kentucky*, 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972). In *Colten*, the majority (407 U.S. at 117, 92 S.Ct. at 1960) noted the Kentucky Court of Appeals' characterization of the first-tier court:

"[T]he inferior courts are not designed or equipped to conduct error-free trials, or to insure full recognition of constitutional freedoms. They are courts of convenience, to provide speedy and inexpensive means of disposition of charges of minor offenses." *Colten v. Commonwealth*, 467 S.W.2d 374, at 379 [Ky.1971].

These systems were sustained because of their unique feature, i. e., the automatic right, upon motion, to a trial *de novo* at a court with full constitutional protections. Trial at this second-tier is a complete "fresh start"; there is no requirement that the defendant allege or demonstrate an error/defect in the first proceeding which is a prerequisite to the granting of a new trial in the normal appellate process (including under the provisions of Article 69). It is this feature, clearly absent in the Congressional scheme for the summary court-martial, which provides the saving grace to this system whose primary justifications for glossing over constitutional protections are cost and speed. This concept was determined sufficient to overcome objections to the constitutional infirmities inherent in the use of lay judges and the absence of the right to trial by jury in *North v. Russell*, 427 U.S. 328, 96 S.Ct. 2709, 49 L.Ed.2d 534 (1976), and *Ludwig v. Massachusetts*, 427 U.S. 618, 96 S.Ct. 2781, 49 L.Ed.2d 732 (1976).

Besides the rather conspicuous absence of any automatic right to a trial *de novo* following the imposition of discipline at the summary court-martial level, two additional significant distinctions are found in the *North* and *Ludwig* opinions. The first is a recognition by the Court that a defendant may, if he desires, use the first proceeding as a discovery tool to de-

Manual, *supra*, clearly did not involve "military offenses unknown in civilian society." [15] Each act—possession of marihuana and aggravated assault—concerned conduct denounced as criminal in the civilian community; the latter offense, in fact, is often catalogued as a felony. In order to comply with the views expressed by the Supreme Court and to obtain results consistent with the underlying rationale of *Gagnon* and *Kent*, we find it necessary to limit summary courts-martial to disciplinary actions concerned solely with minor military offenses unknown in the civilian society. In setting forth this necessary limitation, we do not mean to preclude the convening authority from referring such offenses, in the proper instance, to a criminal tribunal. Yet, if the underlying themes of the *Middendorf* holding are to be given effect, this limitation is mandated. These themes are that

> [t]he summary court-martial proceeding here is likewise different from a traditional trial in many respects, the most important of which is that it occurs within the military community. This latter factor, under a long line of decisions of this Court, is every bit as significant, and

every bit as entitled to be given controlling weight, as the fact in *Gagnon* that the defendant had been previously sentenced, or the fact in *Gault* that the proceeding had a rehabilitative purpose

. . . . .

> Conviction of such an offense [a minor military offense] would likely have no consequences for the accused beyond the immediate punishment meted out by the military, unlike conviction for such civilian misdemeanors as vagrancy or larceny which could carry a stamp of "bad character" with conviction.[16]

To hold otherwise would be to compel the individual to surrender his constitutional rights upon entering the military service of his country.

We wholeheartedly express our firm belief that those exercising the command function need the disciplinary action provided for under Article 15 and the summary court-martial under Article 20 to meet and complete their military mission. Accepting that an attorney is not a necessary prerequisite to such a disciplinary hearing, we must nevertheless reexamine these hearings to ensure compliance with the command of

termine the strengths and weaknesses of the prosecution's case (while exposing little, if any, of his own) in preparation for his defense at the trial *de novo* in the second-tier court should he choose to exercise his option to vacate the first-tier judgment by appealing. The second, which is completely at odds with the conclusions reached in *Middendorf*, is that "of course, if an accused is indigent, the State is required to furnish him counsel without cost before he may be deprived of his liberty. *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972)." *Ludwig v. Massachusetts*, 427 U.S. at 627, 96 S.Ct. at 2786.

We find for these reasons that the analogy offered and its resultant conclusions are unsound. Examining the various separate contentions of the dissenting judge, we conclude that despite the assumption by the Supreme Court that the lay judge will usually advise a defendant of his rights to a trial *de novo following a determination against him*, the absence of this right to a trial *de novo*, the lack of the right to the assistance of counsel under *Argersinger*, and the dual role of being both prosecutor and judge served by the summary court-martial officer, compel us to require the advice of independent counsel. Further, with all due respect to our dissenting Brother, we feel that the lan-

guage from *Middendorf* set forth throughout the text of this opinion can lead to no other conclusion but that the Court held that this hearing was not a criminal proceeding, and hence, the imposition of discipline at this level is not a criminal conviction. This view is buttressed by the fact that the Court recognized that this hearing did not even have to conform to all the requirements of an administrative hearing and that its function was to provide commanders with a quick disciplinary proceeding for minor military offenses. This is bolstered further by the language from the Court that imposition of discipline at this level will not carry the "stamp of bad character," nor will it create consequences for an accused beyond the immediate imposition of the discipline. Clearly the entire tenor of *Middendorf* suggests a speedy disposition of a disciplinary problem without the need for, or the mechanism of, automatically, upon motion, receiving a trial *de novo* following an adverse finding at the summary level.

15. 425 U.S. 49, 50 n. 1, 96 S.Ct. 1294 (Powell, J., concurring).

16. 425 U.S. at 38–39, 96 S.Ct. at 1289 (footnote omitted).

the Supreme Court that they measure up to the essentials of due process and fair treatment. Looking first to the procedures set forth in paragraph 79, Manual, *supra*, we find in *d* thereof the proper admonishments and questions for determination by the person subject to discipline.[17] The principal problems with the procedures detailed in paragraph 79 concern explanation of the consequences of the answers. Clearly the legal ramifications of the decision to choose the criminal adversary proceeding as opposed to a disciplinary hearing can indeed be great, especially in terms of substantive and procedural rights at the given hearing, punishment limitations, and potential uses of the imposition of discipline through such proceedings in a later criminal prosecution. The advice of a legally trained person is required to meaningfully explain these ramifications and thus permit the individual to make an informed decision.

The consequences of a decision to accept either an Article 15 or a summary court-martial disciplinary action under Article 20 involve due process considerations.[18] Believing as we do that only a legally

trained person can supply the requisite quantum of information necessary for an informed decision, we believe it mandatory that the individual to be disciplined must be told of his right to confer with an independent counsel before he opts for disposition of the question at either of the above levels. Absent compliance with this proviso, evidence of the imposition of discipline under either is inadmissible in any subsequent trial by court-martial.[19] A waiver of the statutory right under Articles 15 and 20 for removal to trial in a criminal proceeding must be in writing.[20]

It is in order to give some meaning to the due process guarantees of the Fifth Amendment [21] that we must provide limitations on the utilization of evidence of the imposition of discipline at a summary court-martial in a subsequent trial. Those hearings in which the accused was represented by counsel, or has executed a valid waiver of the assistance of counsel [22] may be used for the purpose of enhancement of the punishment since the basic concepts and protections of *Argersinger* will have been met. However, in those instances where

---

**17.** Paragraph 79*d* in pertinent part provides for the hearing officer to advise the individual of his procedural rights at the hearing, the nature of the charges against him, the name of his accuser, the witnesses who will likely be called, his rights to testify or remain silent, his rights under paragraph 75 if found guilty, and his right to object to trial by summary court-martial. Further, procedures for a providency inquiry, or presentation of evidence are provided, as well as procedures for the announcement and determination of both findings and sentence.

**18.** The term "accept" is used in the context of the decision not to exercise the rights under Articles 15 and 20 to proceed to a higher lever for trial by a criminal tribunal.

**19.** This includes for the purposes of the "escalator clause" under Section B of paragraph 127 *c*, for aggravation under paragraph 75, or for impeachment under paragraph 153*b*, Manual, *supra*.

**20.** It is imperative that this written waiver establish a voluntary, knowing, and intelligent decision to forego removal to a criminal proceeding which was done with sufficient awareness of the relevant circumstances to satisfy the standards set forth in *Johnson v. Zerbst*,

304 U.S. 458, 465, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), and *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). Any ambiguity must be resolved prior to the utilization of evidence of discipline under either codal provision. This is required because the individual in making this decision is actually waiving his right to a full adversary criminal proceeding with its attendant Fifth and Sixth Amendment protections under *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), and *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 492, 9 L.Ed.2d 799 (1963).

**21.** As noted by the dissent in *Middendorf* and in argument before this Court, the individual to be disciplined still has the right to have retained counsel at the summary court-martial. This presents an additional due process question which the *Middendorf* majority declined to answer. We will not tread where the High Court will not lead; however, this position does not permit us to fail to give protection to the indigent in order to comply with the Supreme Court mandate that counsel need not be supplied at a summary court-martial.

**22.** *See* note 20.

the individual, after receipt of the mandatory advice of counsel as detailed earlier in this opinion, chooses disposition by a summary court-martial as redefined by *Middendorf*—that is, one where the accused was denied representation by counsel—the evidence can only be used to aggravate the penalty within the parameters prescribed for the offense under paragraph 127c[23] as evidence of the character of his prior service.[24]

■ Our review of the exhibits admitted in evidence and relied upon by the trial judge in his determination to utilize the "escalator clause" fails to satisfy us that a valid waiver of counsel occurred in either of the prior summary courts-martial in question. Although we are normally disposed to assume accuracy and reliability of official records, this assumption has limits. *See United States v. Mahan*, 1 M.J. 303 (1976). We believe that the Supreme Court's and this Court's longstanding position of requiring that every reasonable presumption against waiver of the assistance of counsel be indulged, *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), mandates that the record affirmatively demonstrate a valid *personal*[25] waiver by the individual of his right to trial in a

criminal proceeding[26] rather than having us infer or assume one solely on the basis of a single check in a box on a prepared form. If the exhibit does not affirmatively establish a valid waiver, the trial judge must conduct an inquiry *on the record* to establish the necessary information. *See United States v. Davis*, 3 M.J. 430 (C.M.A.1977); *United States v. Rivas*, 3 M.J. 282 (C.M.A. 1977) (Fletcher, C. J., concurring). As this record fails to satisfy this requirement, we must order corrective action.

The decision of the United States Navy Court of Military Review as to sentence is reversed. The record of trial is returned to the Judge Advocate General of the Navy who may either return the record to the Court of Military Review for approval of a sentence within the limits prescribed in paragraph 127c, or to a convening authority for a rehearing on sentence.[27]

Judge PERRY concurs.

COOK, Judge (dissenting):

In *North v. Russell*, 427 U.S. 328, 96 S.Ct. 2709, 49 L.Ed.2d 534 (1976), the United States Supreme Court reviewed a two-tier court system in which a person accused of certain offenses could be tried in a police

**23.** A related question concerns whether these hearings will be considered by this Court as convictions for the purposes of paragraph 153b (2)(b), Manual, *supra*; we feel that the reasons set forth above for concluding that the *Middendorf* decision compels us to consider these as only disciplinary hearings rather than criminal proceedings similarly compels the conclusion that as such, evidence of the imposition of discipline at such a hearing does not constitute evidence of a conviction for the purposes of impeachment. Examination of the relevant section of the Federal Rules of Evidence, Rule 609, further supports this conclusion. Other forms of impeachment and the use of character evidence under rules 404 and 608, should not come into consideration because of the requirements within the rules concerning probativeness and relevancy which discipline for minor military offenses would rarely, if ever, entail.

We therefore, need not reach the defense contention that *Burgett v. Texas*, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967), prohibits the use of such evidence, as we conclude that these hearings do not constitute criminal proceedings/convictions.

**24.** Clearly it is only for this limited purpose, assuming compliance with the aforementioned required advice of counsel, that the imposition of discipline under the provisions of Article 15 may be utilized. *United States v. Johnson, supra*.

**25.** We note that the form in question was not signed by the accused, nor did he ever acknowledge or adopt the purported waiver on the record of this trial.

**26.** *See* note 20.

**27.** We are not unsympathetic to the reasoning advanced by the trial judge as to the appropriateness of a punitive separation from the service for this accused. However, we cannot allow utilization of records of disciplinary actions to trigger the "escalator clause" of paragraph 127c absent a satisfactory establishment of either the assistance of counsel at the hearing or a valid waiver of that assistance.

court in which the judge was a nonlawyer. The Court noted that "[i]t is obvious that many defendants . . . may be uncounseled when they appear before the police court" and "may be unaware of their right to a *de novo* trial after a judgment is entered." *Id.* at 335, 96 S.Ct. at 2712. The Court assumed that the lay police judges would "recognize their obligation . . . to inform" the accused of the right to counsel, if confinement was to be imposed, and of the right to " 'appeal,' " if convicted. *Id.* The Court upheld the two-tier system. In my opinion, a summary court officer and a commanding officer proceeding under Article 15, Uniform Code of Military Justice, 10 U.S.C. § 815, although not legally trained, are equally qualified to advise an accused of his right to refuse to be tried by a summary court-martial or to accept Article 15 punishment, as the case may be. I disagree, therefore, with the majority's determination that "advice of a legally trained person is required to meaningfully explain" the rights of an accused at these proceedings and thus permit the individual to make an informed decision.

I also disagree with the limitations imposed by the majority on the "use of the summary courts-martial" which they deem mandated by "the overall ramifications of *Middendorf.*" In *Middendorf v. Henry*, 425 U.S. 25, 96 S.Ct. 1281, 47 L.Ed.2d 556 (1976), the Supreme Court determined that the right to counsel protected by the Sixth Amendment does not extend to a summary court-martial in which confinement is imposed. Whatever the criticism of that holding, the fact that the accused is not accorded a particular constitutional right does not mean the court's determination of guilt is not a conviction. The two-tier system sustained by the Supreme Court demonstrates that a first-tier court can be invested with statutory authority to determine whether the accused has violated a provision of the criminal law of the jurisdiction and to impose punishment upon a finding of guilty, notwithstanding the procedure in that court does not incorporate all the constitutional requirements for a criminal court.

Typically, in the two-tier system, although charged with an offense providing for a punishment that constitutionally requires trial by jury, the defendant can be made to stand trial before a first-tier court with no jury. Similarly, the judge of a first-tier court need not be legally trained, but it would appear that the judge of a second-tier court must be. A first-tier court can, like a summary court, also try an accused for very serious offenses. *Ludwig v. Massachusetts*, 427 U.S. 618, 620, 96 S.Ct. 2781, 49 L.Ed.2d 732 (1976). The circumstance that saves the two-tier system from constitutional infirmity in these instances is the fact that the defendant has a ready and easy means of having his case tried anew by a second-tier court. But, if the defendant does not seek trial in a second-tier court, a finding of guilt and imposition of sentence by the first-tier court constitute a conviction.

In my opinion, the circumstance that avoids constitutional infirmities in a first-tier court is also present in a summary court-martial. Article 20, UCMJ, provides that an accused may object to trial by summary court-martial; and, if he objects, he can be tried only by a special or general court-martial, where he is entitled to counsel. *See* Article 27, UCMJ, 10 U.S.C. § 827. Some jurisdictions having a two-tier court system allow the accused "to bypass" trial in the first-tier court if he desires the constitutional rights not provided for in that tribunal. *Ludwig v. Massachusetts, supra,* 427 U.S. at 620, 96 S.Ct. 2781. Although the military court system is not generally regarded as a two-tier system, the "bypass" right accorded the accused at the summary court level operates to give it that effect. Its presence in the Code effectively removes, in my opinion, the underpinning of the majority's perceptions of the "ramifications" of *Middendorf.*

I would affirm the decision of the Court of Military Review.