**UNITED STATES, Appellee,**

v.

**Sergeant Tyrone SIMS, 369–64–8905, United States Army, Appellant.**

**ACMR 8800906.**

U.S. Army Court of Military Review.

29 March 1989.

---

**580**

For Appellant: Lieutenant Colonel Russell S. Estey, JAGC, Major Eric T. Franzen, JAGC, Captain Wayne D. Lambert, JAGC (on brief).

For Appellee: Colonel Norman G. Cooper, JAGC, Lieutenant Colonel Gary F. Roberson, JAGC, Major Daniel J. Dell'Orto, JAGC, Captain Randy V. Cargill, JAGC (on brief).

Before MYERS, WERNER and SMITH, Appellate Military Judges.

## OPINION OF THE COURT

MYERS, Senior Judge:

Contrary to his pleas, appellant was convicted by a special court-martial composed of officer and enlisted members of one specification of wrongful use of cocaine in violation of Article 112a, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. § 912a. The convening authority approved the sentence of a bad-conduct discharge and reduction to Private E1. Before us appellant alleges that the military judge's instructions on the elements of use of cocaine were insufficient and that the military judge erred by admitting a record of nonjudicial punishment imposed on the appellant on 4 October 1976.

### I

The prosecution's case consisted solely of evidence that the appellant tested positive for cocaine metabolites in a random urinalysis sampling. Appellant denied using cocaine but could not explain the presence of the cocaine metabolites in his urine and, apart from an inconclusive suggestion that the officer responsible for conducting the urinalysis may have left the filled sample bottles unattended on his desk for a short time, there is no evidence of tampering. Furthermore, there is no evidence of innocent ingestion. The military judge instructed, *inter alia*, as follows:

> Now, the accused is charged with the wrongful use of cocaine. In order to find him guilty of this offense, you must be satisfied by legal and competent evidence beyond reasonable doubt of the truth of each of the following elements. First, that on or about the period 22 through 24 November 1987 at some location, the accused used cocaine;
>
> Second, that he knew that he used cocaine at the time he was using it; and
>
> Third, that this use by the accused was wrongful.
>
> To be punishable, use of cocaine must be wrongful. Use of a controlled substance, that is cocaine, is wrongful if it's without legal justification or excuse. Use of cocaine may be inferred to be wrongful in the absence of evidence to the contrary. However, the drawing of this inference is not required.

Appellant acknowledges that the military judge instructed on the element of knowledge and properly instructed that the court could infer wrongfulness from the fact of ingestion. However, because the military judge failed to instruct the court on how it could find the element of knowledge regarding the drug's presence, whether by permissive inference from the fact of ingestion or otherwise, appellant contends that the court may have presumed knowledge and "impose[d] an absolute criminal liability because of the very presence of the controlled substance" (quoting from *United States v. Mance* [1]). Thus, appellant argues that the findings are unreliable and should be set aside because it cannot be determined "whether the court members evaluated the evidence and reached their verdict by way of a proper method (*i.e.* inference) or an improper method (*i.e.* presumption or a mistaken belief that direct evidence existed)."

1. *United States v. Mance,* 26 M.J. 244, 256 (C.M.A.), *cert. denied,* —— U.S. ——, 109 S.Ct. 367, 102 L.Ed.2d 356 (1988).

■ Because this case was tried three months before the Court of Military Appeals (Court) published its decision in *United States v. Mance*, 26 M.J. 244, we must first determine the retroactive applicability of *Mance* and whether appellant's reliance thereon was properly placed. We note first of all that some two weeks after the publication of *Mance*, the Court set aside the findings of guilty in *United States v. Brown*, 26 M.J. 266 (C.M.A.1988), holding that the military judge failed to instruct on the element of knowledge as required by *Mance*. The Court did not mention retroactivity, apparently assuming that *Mance* would apply. More recently and more importantly, in *United States v. Avila*, 27 M.J. 62 (C.M.A.1988), the Court considered the issue of the retroactive applicability of the United States Supreme Court's decision in *Solorio v. United States*, 483 U.S. 435, 107 S.Ct. 2924, 97 L.Ed.2d 364 (1987). The Court recounted the history of the rules of retroactivity and concluded that in view of *Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987),[2] "[i]t appears that we have no option but to apply the Supreme Court's holding in *Solorio* to this case." *Avila*, 27 M.J. at 65. We hold, therefore, that inasmuch as this court has no greater number of options than does the United States Court of Military Appeals on this issue, the decision in *Mance* must be retroactively applied to this case.

The facts herein are virtually identical to those in *Mance*. In both cases, the sole evidence against the accused was the urinalysis results and the military judge's instructions were based on the standard instructions contained in the Military Judges' Benchbook.[3] In discussing the issue of knowledge in "possession" and "use" cases, Chief Judge Everett, author of the principal opinion in *Mance*, observed that in *United States v. Greenwood*, 19 C.M.R. 335 (C.M.A.1955), the Court held that there were three different types of knowledge

relating to both possession and use of contraband substances. *Mance*, 26 M.J. at 249. First, the situation in which the accused is aware of what he possesses or uses but is unaware that it is illegal to do so. In such a case, "ignorance of the law" is not a defense. *Id.* Second, knowledge of the presence of the substance, to which ignorance of fact would be a defense. *Id.* Third, knowledge of the "physical composition of the substance," to which the defense of mistake of fact would apply if properly raised by the evidence. *Id.*

In applying those criteria to the *Mance* case, the Court stated:

> Under our interpretation of Article 112a, knowledge of the presence of the substance is a component of "possession" and of "use".... In prosecutions for either possession or use of a controlled substance, the presence of that substance could permit a logical inference under appropriate circumstances that the accused had the requisite knowledge of its presence; and this permissive inference would be legally sufficient to satisfy the Government's burden of proof as to knowledge.

*Mance* 26 M.J. at 253–254 (citations omitted). The element of wrongfulness involves a different type of knowledge, namely knowledge of the character of the substance concerned. *Id.* at 254. Thus, the Court concluded that "both the 'knowledge' required to show 'possession' or 'use' and the 'knowledge' required to show 'wrongfulness' may be inferred by the factfinder from the presence of the controlled substance." *Id.* Under appropriate circumstances, the military judge may instruct "that the presence of the controlled substance authorizes a permissive inference ... that the accused had the type of knowledge required to establish ... 'use,' as well as the type of 'knowledge' required to establish 'wrongfulness.'" *Id.* at 256.

---

**2.** "We therefore hold that a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past." *Grif-* *fith v. Kentucky*, 479 U.S. at 328, 107 S.Ct. at 716, 93 L.Ed.2d at 661.

**3.** Dep't of Army, Pam. 27–9, Military Judges' Benchbook, para. 3–76.4*b* (1 May 1981) (Cl, 15 Feb. 1985).

In the case at bar, the military judge instructed the court members on the element of knowledge (that appellant *"knew* that he used *cocaine* at the time he was using it")* (emphasis added), but did not specifically instruct that they could permissively infer the requisite knowledge from the fact of ingestion. Although *Mance* holds that the military judge *may* instruct on such an inference under "appropriate circumstance," *Id.* at 256, we do not interpret *Mance* as mandating such an instruction in every case. We must determine, then, whether the military judge erred by omitting the instruction on permissive inference under the circumstances of this case.

■ Appellant denied using cocaine. There was no direct evidence that appellant knew he was ingesting cocaine and no evidence of innocent ingestion. Appellant's defense was based on a mix-up or break in the chain-of-custody of the urine sample. Having found that cocaine was present in appellant's body on the dates in question, the members could have logically inferred that appellant was aware of the presence of the cocaine at the time he was ingesting it. Based on these facts, the military judge should have instructed that knowing ingestion of a controlled substance can be inferred from its presence in the body. However, the military judge did adequately identify the element of knowledge to be resolved by the members by instructing the court members to find as an element of the offense that appellant knew he was using cocaine at the time he was using it. Since an element of a charged offense was not entirely omitted as it was in *Brown*, the erroneous instruction may be tested for harmlessness rather than by a plain error analysis.[4] *Mance*, 26 M.J. at 256.

■ The military judge did instruct the members that in order to find appellant guilty of use of cocaine they must find beyond a reasonable doubt each element of the offense, one of which, as we have al-

ready noted, was knowledge. The members were not instructed that they could presume knowledge nor did the judge mention any evidence of such knowledge in the instructions. The members were simply instructed that in order to find appellant guilty, they must find that he knew that the substance was cocaine at the time he ingested it. Further, trial defense counsel neither objected to the instructions as given nor requested additional or clarifying instructions.

Under the circumstances, we cannot conclude that the court members improperly "presumed" appellant's knowledge of the substance based on the presence of cocaine. The court members were required to find the existence of the two types of knowledge discussed in *Mance* and the mere omission of a specific instruction regarding the permissive inference did not preclude the court members from determining the existence of the pertinent elements of "use" of cocaine. If anything, an instruction on the permissive inference would have assisted the government in establishing the elements of the offense. We find that appellant was not prejudiced and that the findings of guilty would have been the same had the military judge instructed that the court could permissively infer the requisite knowledge from the fact of ingestion.

II

■ Appellant next asserts that the military judge improperly admitted into evidence Prosecution Exhibit 7 [hereinafter Pros. Exh. 7], which is a Department of Army Form 2627, Record of Proceedings under Article 15, UCMJ, dated 4 October 1976, for wrongful possession of marijuana. Individual defense counsel objected to its admission on the grounds that the punishment was too remote in time, that it was "prejudicial based on the charge," and that it constituted uncharged misconduct. Those objections were overruled and the

4. If we had concluded that the military judge omitted "entirely any instruction on an element of the charged offense," we would not test for harmlessness because the court members would have been prevented from considering that element at all. *Mance*, 26 M.J. at 255. *See also Brown*, 26 M.J. at 266.

document was admitted. On appeal, citing *United States v. Brown*, 11 M.J. 263 (C.M. A.1981), appellant asserts that Pros. Exh. 7 was not properly maintained in appellant's official military personnel file (OMPF) and that it did not comply with the requirements of *United States v. Booker*, 5 M.J. 238 (C.M.A.1977).[5]

■ Military Rule of Evidence 403[6] provides that evidence, although relevant, may nevertheless be excluded if its probative value is "substantially outweighed by the danger of unfair prejudice." We assume that is what the trial defense counsel was referring to when making his "remoteness" and "prejudicial" objections. We agree with the military judge, however, that Pros. Exh. 7 was not prejudicial on findings since the court did not see it until after appellant had been found guilty. We further agree that Pros. Exh. 7 was relevant on sentencing, its "remoteness" affecting the weight to be given it by the court. Furthermore, the objections to Pros. Exh. 7 made for the first time on appeal were waived by not having been made at the time of trial. *See United States v. King*, 27 M.J. 545, 549–50 (A.C.M. R.1988); R.C.M. 1001(b);[7] Mil.R.Evid. 103(a).[8] *See also United States v. Taylor*, 12 M.J. 561, 562–3 (A.C.M.R.1981) (*Booker* objection to record of previous conviction by summary court-martial waived by failure to object). *Cf. United States v. Salgado–Agosto*, 20 M.J. 238 (C.M.A.1985) (error in admission of record of nonjudicial punishment was waived where defense counsel did not identify favorable information from the accused's personnel file which should also have been admitted). Even assuming there was an error,[9] the admission of Pros. Exh. 7 was not prejudicial. The extensive extenuation and mitigation presented on appellant's behalf and the comparatively lenient sentence imposed by the court members suggest that Pros. Exh. 7 was not given much weight, if any.

---

5. *United States v. Booker*, which was decided by the Court of Military Appeals one year after imposition the Article 15 in question, requires that the individual to be disciplined under Article 15 or by summary court-martial "be told of his right to confer with an independent counsel before he opts for disposition of the question" at either level. *Booker*, 5 M.J. at 243. Absent such advisement, evidence of imposition of discipline under Article 15 or by summary court-martial will not be admissible at a subsequent trial by court-martial. *Id.* Our examination of Pros. Exh. 7 indicates that appellant was informed of his right to consult with a lawyer located in "Bldg. 462." As long as an accused is informed of his rights under Article 15 and his right to consult with counsel, the *Booker* requirements are met. Once informed of his rights, an accused may choose not to exercise those rights. It appears from the dates on Pros. Exh. 7 that appellant chose not to utilize the 72 hours he was offered to consult with counsel, but instead, chose to proceed with the Article 15. *Cf.* Army Regulation [hereinafter AR] 27–10, Legal Services: Military Justice (16 Jan. 1989), para. 3–18*f* (1) (If the soldier does not request a delay in the Article 15 proceedings to consult with counsel regarding the disposition of his case, "the commander may continue with the proceedings immediately.").

6. Manual for Courts–Martial, United States, 1984, Mil.R.Evid 403 [hereinafter MCM, 1984 and Mil.R.Evid, respectively].

7. MCM, 1984, Rule for Courts–Martial 1001(b)(2) ("objections not asserted are waived.").

8. Mil.R.Evid 103(a) provides that an objection to the admission of evidence should state the specific grounds for the objection.

9. Prosecution Exhibit 7 was in fact properly filed in appellant's OMPF. Paragraph 3–15*b* (3)(a), AR 27–10, Legal Services: Military Justice (C16, 4 Nov. 1975), provided for the filing of the original copy of records of nonjudicial punishment:

   In cases of persons serving on active duty in an enlisted status and having completed 3 years or less of active Federal military service at the time of the offense (or earliest of the offenses) alleged—
   (a) *Original*. US Army Enlisted Records Center (PASC), Fort Benjamin Harrison, IN 46249, for permanent filing in the efficiency portion of the Official Military Personnel File (OMPF).

   Effective 1 November 1982, commanders imposing nonjudicial punishment were given the option of filing the records of such punishment in the performance (efficiency) fiche or restricted fiche. AR 27–10, para. 3–37*b* (1) (1 Sep. 1982). As of September 1982, AR 27–10 has provided that "[r]ecords of NJP presently filed in either the performance or restricted fiche of the OMPF will remain, subject to other applicable regulations." *Id.* at para. 3–41.

The findings of guilty and the sentence are affirmed.

Judge WERNER and Judge SMITH concur.

**UNITED STATES, Appellee,**