UNITED STATES, Appellee

v.

Glen P. EDWARDS, Aviation Boatswain's
Mate, U.S. Navy, Appellant.

No. 96–0126.
Crim.App. No. 94–0085.

U.S. Court of Appeals for
the Armed Forces.

Argued Oct. 2, 1996.

Decided Feb. 28, 1997.

**42**

For Appellant: *Lieutenant Syed N. Ahmad*, JAGC, USNR (argued); *Commander Mary T. Hall*, JAGC, USN (on brief).

For Appellee: *Lieutenant K.L. Flynn*, JAGC, USNR (argued); *Colonel Charles Wm. Dorman*, USMC and *Commander D.H. Myers*, JAGC, USN (on brief).

*Opinion of the Court*

GIERKE, Judge:

A special court-martial convened at Naval Station, Philadelphia, Pennsylvania, convicted appellant, pursuant to his pleas, of six unauthorized absences, in violation of Article 86, Uniform Code of Military Justice, 10 USC § 886. The adjudged and approved sentence, imposed by officer members, provides for a bad-conduct discharge, confinement for 60 days, partial forfeiture of pay for 2 months, and reduction to the lowest enlisted grade. The Court of Criminal Appeals affirmed the findings and sentence. 43 MJ 619 (1995).

Our Court granted review of the following issue:

WHETHER THE LOWER COURT ERRED IN DETERMINING THAT THE OPERATIONAL STATUS OF A NAVAL VESSEL WAS IRRELEVANT FOR THE PURPOSE OF IMPOSING NONJUDICIAL PUNISHMENT UNDER ARTICLE 15.

█ Because the court below based its decision on an incorrect view of the law, we set aside its decision. For the reasons set out below, we hold that the operational status of a naval vessel is relevant to admissibility of evidence that a member of the vessel's crew received nonjudicial punishment without being afforded the opportunity to demand trial by court-martial in lieu of nonjudicial punishment. Because neither the military judge nor the court below elicited the relevant facts concerning the nonjudicial punishment at issue in this case, we must remand for factfinding and reconsideration.

This case involves the so-called "vessel exception" to Article 15, UCMJ, 10 USC § 815. Article 15 empowers commanding officers to impose nonjudicial punishment on members of their commands. It also provides that "[E]xcept in the case of a member attached to or embarked in a vessel, punishment may not be imposed upon any member of the armed forces under this article if the member has, before the imposition of such punishment, demanded trial by court-martial in lieu of such punishment." Art. 15(a).

The granted issue arose during appellant's sentencing hearing, when the prosecution offered evidence that appellant had received nonjudicial punishment for a short unauthorized absence and for carrying concealed weapons. The evidence reflected that when the nonjudicial punishment was imposed, appellant's unit was "USS CONSTELLATION (CV 64) AT NAVSHPYD PHILA PA." Defense counsel objected, citing *United States v. Yatchak*, 35 MJ 379 (CMA 1992), and *United States v. Lorance*, 35 MJ 382 (CMA 1992). Defense counsel asserted that the USS CONSTELLATION was not in an operational status when the punishment was imposed, but was undergoing overhaul at the Philadelphia Navy Yard. Defense counsel argued that because the ship was not in an operational status, appellant was not "attached to or embarked in a vessel" within the meaning of Article 15. Thus, at the time the Article 15 was administered, appellant had the right to demand trial by court-martial and to consult with a lawyer before deciding whether to demand trial.

The military judge admitted the evidence of nonjudicial punishment without commenting on the merits of the defense objection. Defense counsel then asked, "[I]s the court stating that they [sic] believe the CONSTELLATION is an operational vessel?" The military judge responded that "it's the court's interpretation that the cases cited by the defense counsel refer to the issue of whether an accused is attached to or embarked on a vessel for the purposes of awarding bread and water as a punishment

at a court-martial," and that "the court interprets that holding to apply only to that punishment." Defense counsel asked that it be "noted on the record that we feel that because it's not an operational vessel for those purposes that we feel that at the very least *Booker* warnings should be given." *See United States v. Booker*, 5 MJ 238 (CMA 1977) (right to consult with counsel before deciding whether to demand trial). The military judge concluded the discussion by informing defense counsel that "[y]our objection is made for the record."

The Court of Criminal Appeals held "that the operational status of a naval vessel is not relevant for the purpose of imposing [nonjudicial punishment] under Article 15(a), UCMJ," and "that a naval ship undergoing overhaul is a vessel at all times without regard to its operational status until a determination is made to the contrary by competent authority." 43 MJ at 624–25. The court below construed our decision in *Yatchak* to be limited to the question of whether confinement on bread and water in that case was imposed under circumstances that made it "cruel or unusual" and thus prohibited by Congress in Article 55, UCMJ, 10 USC § 855. 43 MJ at 624.

In *Yatchak*, we construed the term "attached to or embarked in a vessel" as it appears in Article 15(b)(2)(A). We held that confinement on bread and water was not an authorized punishment in that case because the accused was not "attached to or embarked in a vessel" within the meaning of Article 15(b)(2)(A). We relied on several factors: (1) the sentence was imposed by a court-martial conducted ashore; (2) the sentence was imposed on a sailor assigned to a vessel undergoing long-term overhaul that would not be completed until several months after the trial; (3) the Government and the defense agreed that the vessel "was never in an operational status throughout the period of appellant's naval service"; and (4) the sentence was served in a shore facility. 35 MJ at 380.

■ The question raised by the military judge's ruling and the decision of the court below is whether the term "attached to or embarked in a vessel" has the same meaning in Article 15(a) as it does in Article 15(b)(2)(A). We hold that it does. It is a fundamental rule of statutory construction that "[u]nless the context indicates otherwise, words or phrases in a provision that were used in a prior act pertaining to the same subject matter will be construed in the same sense." N. Singer, 2B *Sutherland Statutory Construction* § 51.02 at 122 (5th ed.1992). Both Article 15(a) and 15(b)(2)(A) use the exact same term pertaining to nonjudicial punishment. The context does not invite a different construction. Accordingly, we hold that the military judge and the court below erred by limiting the *Yatchak* definition of the "vessel exception" to cases involving confinement on bread and water.

■ Our review of the decision of the court below does not involve the legality of appellant's nonjudicial punishment, but only its admissibility in a subsequent court-martial. The jurisdiction of our Court does not extend to direct review of nonjudicial punishment proceedings. *See Jones v. Commander, Naval Air Force, U.S. Atlantic Fleet*, 18 MJ 198 (CMA 1984); *Dobzynski v. Green*, 16 MJ 84 (CMA 1983).

■ In *United States v. Booker, supra*, this Court held that evidence of previous nonjudicial punishment is not admissible unless the person being punished was advised of his or her right to confer with "independent counsel" before deciding whether to demand trial by court-martial. Of course, if the evidence relating to the nonjudicial punishment shows that the person being punished had no right to demand trial because he was "attached to or embarked in a vessel," then *Booker* is inapplicable. *See United States v. Mack*, 9 MJ 300, 320 (CMA 1980) (*Booker* not intended to apply to persons "attached to or embarked in a vessel").

In determining whether appellant was "attached to or embarked in a vessel," two issues must be resolved: (1) Was appellant's relationship to the ship sufficient to satisfy what Congress intended by the words "attached to or embarked in," and thus sufficient to trigger the exception to the statutory right to demand trial and the ancillary right

to consult with counsel before deciding whether to demand trial? and (2) Was the ship a "vessel" within the meaning of Article 15? Both questions are preliminary questions of fact. *See* Mil.R.Evid. 104(b), Manual for Courts–Martial, United States (1995 ed.) (ruling on sufficiency of evidence to support a finding of fulfillment of a condition of fact is sole responsibility of military judge).

With respect to the first preliminary question, the legislative history of Article 15 is instructive in discerning what Congress meant by the words, "attached to or embarked in." When Congress first enacted Article 15 in 1950, the statute contained no right to demand trial by court-martial. Instead, Congress merely empowered the service secretaries to, "by regulation, place limitations on the powers granted by this article with respect to ... the applicability of this article to an accused who demands trial by court-martial." Act of May 5, 1950, ch. 169, 64 Stat. 107, 113, *reprinted* in 1950 *U.S.Code Cong. & Admin. News* 115. Paragraph 132, Manual for Courts–Martial, United States, 1951, set out the service regulations as follows:

> Pursuant to the authority of Article 15b, the following departmental regulations with respect to the applicability of Article 15 to persons who demand trial by court-martial are announced by the several Secretaries:
>
> *Army and Air Force.*—No disciplinary punishment under the provisions of Article 15 may be imposed upon any member of the Army or of the Air Force for an offense punishable thereunder if the accused has, prior to the imposition of such punishment, demanded trial by court-martial in lieu of such disciplinary punishment. . . . .
>
> *Navy and Coast Guard.*—No member of the Navy or the Coast Guard may demand trial by court-martial in lieu of punishment under the provisions of Article 15.

In 1962 Article 15 was amended in several respects, including the addition of a statutory right to demand trial by court-martial, "except in the case of a member attached to or embarked on a vessel." Act of September 7, 1962, Pub.L.No. 87–648, 76 Stat. 447, 448,

*reprinted* in 1962 *U.S.Code Cong. & Admin. News* 523. This statutory amendment had the effect of extending to members of the Navy and Coast Guard the right to demand trial by court-martial in lieu of nonjudicial punishment, subject to the "vessel exception."

The legislative history of the 1962 amendment suggests that Congress intended the "vessel exception" to apply only to "military members aboard ship." *See* S.Rep. No.1911, 87th Cong., 2d Sess. 1–2, *reprinted* in 1962 *U.S.Code Cong. & Admin. News* 2379–80. The Senate adopted the amendments to Article 15 on the representation of the Senate Armed Services Committee chairman that the amendment would give all military members a right to demand trial in lieu of nonjudicial punishment except "in some cases where a ship is at sea." 108 Cong Rec. 17,560 (1962), cited in Sullivan, *Overhauling the Vessel Exception,* 43 Naval Law Review, 71 n. 62 [hereafter cited as Sullivan].

When the proposed executive order implementing the amendments to Article 15 was transmitted to the President, it was accompanied by a memorandum from Assistant Attorney General Norbert A. Schlei addressing the ambiguity of the vessel exception and the possibility that it might be applied to persons "considerably removed from the vessel involved, and without regard to whether actual boarding of the vessel is planned for the immediate future...." Mr. Schlei opined that such an interpretation "would appear to be inconsistent with the congressional intent." Mr. Schlei assured the President that "[r]epresentatives of the Air Force [the executive agent for promulgating the changes], on behalf of all the services, state that the military services have no intention of denying an election to any member ... unless he is either aboard [a] vessel or unless he is in the immediate vicinity of a vessel and is in the process of boarding." Appendix A to Sullivan, *supra* at 106–09. Mr. Schlei advised the President that the services also intended to apply the vessel exception "to members attached to vessels who are absent without authority in foreign ports." Mr. Schlei proposed to the President that the

implementing rules be issued as drafted to avoid considerable delay required to redraft them. Finally, Mr. Schlei informed the President that "[i]n order to avoid any misunderstanding concerning this matter," a copy of his memorandum would be disseminated to the services for their guidance. *Id.* at 108. The President signed the proposed executive order as recommended by Mr. Schlei. *See* Exec. Order No. 11,081, 28 Fed.Reg. 945 (1963), *reprinted* in 1963 *U.S.Code Cong. & Admin. News* 1680. We conclude from the foregoing that both Congress and the President intended the "vessel exception" to be limited to situations such as where servicemembers were aboard a vessel, in the immediate vicinity and in the process of boarding, or attached to vessels and absent without authority in foreign ports.

Turning to the second preliminary question of fact, we note that the term "vessel" has been defined by Congress, and that the statutory definition has been incorporated into the Manual for Courts–Martial. RCM 103(20), Manual, *supra*, expressly adopts "[t]he definitions and rules of construction in 1 USC §§ 1 through 5 and in 10 USC §§ 101 and 801." The term "vessel" is defined in 1 USC § 3 as follows: "The word 'vessel' includes every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water." Nothing in the legislative history or legal context suggests that Congress intended a different definition of "vessel" in connection with nonjudicial punishment. Based on this definition, we reject the position taken by the court below that operational status is irrelevant. We hold that a ship's operational status is relevant to a factual determination whether it is "used or capable of being used, as a means of transportation on water." As in *Yatchak*, it is one of several factors involved in determining whether withdrawing the right to demand trial is consistent with the congressional intent behind the vessel exception.

We are mindful of the concerns of the court below that "operational status" is "undefined," and that a ship might become nonoperational under circumstances for which the vessel exception should apply, such as a

casualty at sea, accidental grounding or collision, or wartime damage. 43 MJ at 624. We have little difficulty defining "operational." *See* Webster's Ninth Collegiate Dictionary 827 (1991) ("operational" defined as "ready for or in condition to undertake a destined function").

We have no difficulty imagining situations where a ship is not "operational" because it is disabled or destroyed, but where discipline "at sea" must be maintained. We note, however, that none of those circumstances are present in this case. We will resolve those situations, consistent with our reading of the intent of Congress, when they come before us on a properly developed record.

We also note that the Department of the Navy has issued no regulatory guidance to define the term "operational status" in the four years since this Court used that term in *Yatchak* to limit the phrase "attached to or embarked on a vessel" under Article 15. While we must necessarily reserve judgment on the application of any such guidance to a particular case, we have no reason to doubt that the Navy is capable of publishing guidance that would cover many reasonably forseeable circumstances. Regardless of whether such guidance is published, we are confident that military judges and the courts of criminal appeals can apply their wisdom and experience in assessing whether the right to demand trial by court-martial was denied properly in a particular situation.

■ In appellant's case the record of nonjudicial punishment contains *prima facie* evidence that the vessel exception applied, because it reflects that appellant was assigned to the crew of the USS CONSTELLATION, a commissioned ship of the United States Navy and facially a "vessel" within the meaning of Article 15. Defense counsel's objection at trial asserted matters not reflected on the document. Because the document appears regular on its face, defense counsel had the burden of raising the issues as to the applicability of the vessel exception and *Booker*. *See United States v. Moschella*, 20 USCMA 543, 43 CMR 383 (1971) (official document entitled to presumption of regularity).

Once the defense objection was timely made and the defense asserted that the CONSTELLATION was undergoing long-term overhaul and was not an operational vessel, the military judge should have given the parties an opportunity to present evidence. If the defense had produced sufficient evidence to raise the *Booker* issue, the Government would have had the burden, as proponent of the evidence, to show compliance with *Booker* or the applicability of the vessel exception.

Because the relevant facts were not elicited on the record and the military judge did not make the necessary predicate findings, we cannot determine whether the ship met the statutory definition of a "vessel," nor can we determine appellant's relationship to the ship: whether he lived aboard, performed duties aboard, was administered nonjudicial punishment aboard, or served his punishment aboard. *See United States v. Yatchak, supra.* Accordingly, we cannot determine whether the vessel exception operated to make *Booker* inapplicable to appellant's nonjudicial punishment. Therefore, we must remand this case for further proceedings in light of the legal principles set out above in this opinion.

The decision of the United States Navy–Marine Corps Court of Criminal Appeals as to sentence is set aside. The record of trial is returned to the Judge Advocate General of the Navy for remand to that court for appropriate action consistent with this opinion, which may include: (1) reassessing the sentence to purge the impact of evidence of appellant's nonjudicial punishment on the sentence in accordance with *United States v. Sales,* 22 MJ 305 (CMA 1986); (2) ordering a rehearing on sentence; (3) determining admissibility of evidence of appellant's nonjudicial punishment on the basis of undisputed or stipulated facts; or (4) ordering a factfinding hearing in accordance with *United States v. DuBay,* 17 USCMA 147, 37 CMR 411 (1967).

Thereafter, Article 67, UCMJ, 10 USC § 867, will apply.

Chief Judge COX and Judges CRAWFORD and EFFRON concur.

SULLIVAN, Judge (concurring in part and dissenting in part):

The record in this case shows that appellant received nonjudicial punishment on April 24, 1992, for unauthorized absence and carrying a concealed weapon (a .357 magnum revolver and a .22 caliber pistol). The record also shows the punishment of a reduction from Petty Officer Third Class to Airman, 30 days extra duty, 30 days' restriction, and forfeiture of $350.00 pay per month for 2 months was administered by the commanding officer of the USS CONSTELLATION (CV 64) at the Naval Shipyard, Philadelphia, Pennsylvania. Finally, defense counsel represented to the Court, without government contravention, that "the USS CONSTELLATION like the KITTY HAWK in those cases was not an operational vessel at the time it was in the yards here in Philadelphia...."

I agree with the majority opinion that the military judge erred in holding that *United States v. Yatchak,* 35 MJ 379 (CMA 1992), and *United States v. Lorance,* 35 MJ 382 (CMA 1992), were not applicable in this case. Nevertheless, the record before me shows that appellant was attached to the USS CONSTELLATION (CV 64) at the time of his nonjudicial punishment, and that it was not a vessel for purposes of Article 15, Uniform Code of Military Justice, 10 USC § 815. *See* Mil.R.Evid. 104(a), Manual for Courts-Martial, United States, 1984 (in making admissibility determination, military judge not bound by rules of evidence). I would direct the Court of Criminal Appeals to reconsider appellant's sentence in light of the erroneous admission of this non-judicial punishment. *See* Art. 59(a), UCMJ, 10 USC § 859(a).