*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
KISOR, MIZER, and HARRELL
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Luis A. AGUERO**
Lance Corporal (E-3), U.S. Marine Corps
*Appellant*

**No. 202300227**

_____

Decided: 31 October 2024

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judges:
Andrea C. Goode (trial)
Aran T. Walsh (Entry of Judgment)

Sentence adjudged 1 June 2023 by a special court-martial tried at Marine Corps Base Camp Pendleton, California, consisting of a military judge sitting alone. Sentence in the Entry of Judgment: reduction to E-1, confinement for three months, forfeiture of $500.00 pay per month for three months, and a bad-conduct discharge.

For Appellant:
*Lieutenant Raymond E. Bilter, JAGC, USN*

For Appellee:
*Captain Jacob R. Carmin, USMC* (argued)
*Lieutenant Michael A. Tuosto, JAGC, USN* (on brief)

Judge HARRELL delivered the opinion of the Court, in which Senior Judge KISOR and Judge MIZER joined.

––––––––––––––––––––

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Appellate Procedure 30.2.**

––––––––––––––––––––

HARRELL, Judge:

A military judge convicted Appellant, consistent with his pleas, of one specification of wrongful possession of cocaine with the intent to distribute and one specification of wrongful distribution of lysergic acid diethylamide (LSD), in violation of Article 112a, Uniform Code of Military Justice (UCMJ).[1] Appellant asserts two assignments of error: (1) whether it was plain error for the military judge to admit evidence of a legally invalid nonjudicial punishment (NJP) during presentencing; and (2) if this Court finds waiver, whether the trial defense counsel was ineffective for not objecting to the admission of a legally invalid NJP during the presentencing hearing. We find no prejudicial error and affirm.

## I. BACKGROUND

Appellant received NJP for illegally transporting aliens and a court-martial for possessing and distributing drugs. When evidence of the former was admitted in the latter, the military judge committed plain error or trial defense counsel provided ineffective assistance, asserts Appellant. We find the first issue waived and disagree with the second.

The Government charged Appellant with several drug offenses, and Appellant pleaded guilty to two of them pursuant to a plea agreement. Among the documentary evidence offered by the Government during presentencing was Prosecution Exhibit 5, which trial counsel described as "an NJP dated 27 July of 2021."[2] Prosecution Exhibit 5 consists of various documents related to the NJP, including the Unit Punishment Book, written notification and election of

––––––––––––––––

[1] 10 U.S.C. § 912a.

[2] R. at 50.

rights, and summary of proceedings. The military judge asked if the Defense had any objections to the Government's exhibits, trial defense counsel responded, "No objections, Your Honor," and the military judge admitted the exhibits into evidence.[3] Appellant now claims that in doing so, either the military judge plainly erred or his trial defense counsel provided ineffective assistance. To resolve these issues, the details of this NJP require exposition.

On 19 July 2021, Appellant received written notification that his commanding officer was considering imposing NJP for the following alleged offense:

> Viol of Art. 92: (Failure to obey other lawful order) In that, LCpl Luis A. Aguero, at or near Jacumba, California, on or about 6 April 2021, knowingly and with reckless disregard to the fact that illegal immigrants, identifying themselves as [M.L.] and [F.M.], had entered and remained in the United States in violation of law, did, knowingly transport and move said illegal immigrants within the United States, in order to help said illegal immigrants remain in the United States illegally, in violation of 8 U.S. Code Section 1324(a)(1)(A)(ii), and [sic] offense not capital.[4]

Appellant received notice of his various rights, including the right to refuse NJP, to present matters in defense, extenuation, and mitigation, and to have relevant, reasonably available witnesses present. The written advisement concluded with:

> In order to help you decide whether or not to demand trial by court-martial or to exercise any of the rights explained above should you decide to accept nonjudicial punishment, you may obtain the advice of a lawyer prior to any decision. If you wish to talk to a lawyer, a military lawyer will be made available to you, either in person or by telephone, free of charge, or you may obtain advice from a civilian lawyer at your own expense.[5]

A few days later, on 22 July 2021, Appellant recorded in writing that he consulted with a civilian lawyer and his election to accept NJP.[6] During a personal appearance on 27 July 2021, Appellant's commanding officer advised him

---

[3] R. at 51.

[4] Pros. Ex. 5 at 10.

[5] Pros. Ex. 5 at 11.

[6] Pros. Ex. 5 at 12.

of the offense he was suspected of committing (again framed as an Article 92 violation), to which Appellant pleaded guilty.[7] As reflected in the summary of proceedings, Appellant admitted to his commanding officer: "A friend got a hold of him and asked if he can smuggle some people and agreed. Got paid to smuggle immigrants, a little over $1000. Meet illegal immigrants at set location and bring across the border."[8] The commanding officer found that Appellant committed the offense, and he imposed NJP in the form of reduction to E-2, forfeiture of $1,000.00 per month for two months, and restriction for 60 days.[9] Appellant received notice of his right to appeal the NJP as unjust or disproportionate to the offense; he did not do so.[10]

## II. DISCUSSION

### A. Appellant waived any objection to Prosecution Exhibit 5.

Appellant asserts the military judge plainly erred by "allow[ing] the Government to introduce a record of an unrelated, facially invalid NJP during sentencing. This NJP is facially invalid because its sole Charge and Specification alleged the violation of a federal statute as an orders violation under Article 92, UCMJ."[11] There is a threshold issue, though:

> When an appellant does not raise an objection to the admission of evidence at trial, we first must determine whether the appellant waived or forfeited the objection. If the appellant waived the objection, then we may not review it at all. But if the appellant merely forfeited the objection, then we may review the objection for plain error.[12]

"Whether an appellant has waived an issue is a legal question that this Court reviews de novo."[13] "Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment

---

[7] Pros. Ex. 5 at 14, 18.

[8] Pros. Ex. 5 at 18.

[9] Pros. Ex. 5 at 3, 15.

[10] Pros. Ex. 5 at 2, 17.

[11] Appellant's Br. at 6.

[12] *United States v. Jones*, 78 M.J. 37, 44 (C.A.A.F. 2018) (citations omitted).

[13] *United States v. Davis*, 79 M.J. 329, 331 (C.A.A.F. 2020) (citing *United States v. Haynes*, 79 M.J. 17, 19 (C.A.A.F. 2019)).

of a known right.'"[14] Stated differently, "A forfeiture is basically an oversight; a waiver is a deliberate decision not to present a ground for relief that might be available in the law."[15] Stated differently again, forfeiture is to passivity as waiver is to activity.[16]

The Court of Appeals for the Armed Forces (CAAF) has routinely found waiver from a "no objection" in response to an invitation from the military

---

[14] *United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).

[15] *United States v. Campos*, 67 M.J. 330, 332 (C.A.A.F. 2009) (citing *United States v. Cook*, 406 F.3d 485, 487 (7th Cir. 2005)).

[16] *See United States v. Davis*, 76 M.J. 224, 227 n.1 (C.A.A.F. 2017) ("Forfeiture is the passive abandonment of a right by neglecting to preserve an objection, whereas waiver is the affirmative, 'intentional relinquishment or abandonment of a known right.'") (quoting *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009)).

judge.[17] *United States v. Campos* is particularly instructive.[18] There, the appellant asserted that the military judge plainly erred in admitting a stipulation of expected testimony from a doctor offered by the Government during presentencing.[19] The CAAF did not reach that issue, finding it waived:

> While circumstances may arise where a "no objection" statement by a defense attorney is not enough to demonstrate an intentional relinquishment of a known right, the record in this case does in fact reflect such a relinquishment. The record includes an e-mail from defense counsel to [the doctor] that was sent several days before trial in which defense counsel represented that he "reviewed a document which outlines your . . . expected testimony" and expressed a desire to speak with [the doctor] over

---

[17] *Campos*, 67 M.J. at 332 (C.A.A.F. 2009) ("This is not simply a case where testimony came into evidence without any objection or comment from defense counsel. If that were the case, we would review for plain error. Here the testimony at issue is from a witness that both parties had stipulated need not appear at the trial. In addition, prior to admitting the document into evidence the military judge asked if there were any objections and defense counsel expressly indicated that he had none."); *United States v. Ahern*, 76 M.J. 194, 198 (C.A.A.F. 2017) ("Even without M.R.E. 304(f)(1), Appellant's statement that he had no objection constitutes waiver of his right to object to this Court regarding the admission and use of his pretrial statements. . . . [U]nder the ordinary rules of waiver, Appellant's affirmative statements that he had no objection to their admission also operate to extinguish his right to complain about their admission on appeal.") (citing *Campos*, 67 M.J. at 332–33); *United States v. Swift*, 76 M.J. 210, 217 (C.A.A.F. 2017) ("Appellant not only failed to object to the admission of his confession on the grounds of insufficient corroboration, he explicitly stated he had '[n]o objection' when the Government proffered his sworn statement. He also affirmatively agreed to its use in deliberations. Based both on the ordinary rules of waiver and the specific dictates of M.R.E. 304(f)(1), Appellant waived his right to complain that his confession was inadmissible because it lacked corroboration.") (citing *Campos*, 67 M.J. at 332–33); *Davis*, 79 M.J. at 331 (C.A.A.F. 2020) ("Appellant did not just fail to object and thereby merely forfeited his claim. He affirmatively declined to object to the military judge's instructions and offered no additional instructions. . . . As Appellant has affirmatively waived any objection to the military judge's findings instructions, there is nothing left for us to correct on appeal.") (citing *Campos*, 67 M.J. at 332; *Ahern*, 76 M.J. at 198); *United States v. Cunningham*, 83 M.J. 367, 374 (C.A.A.F. 2023) ("In this case, trial defense counsel 'did not just fail to object,' but 'affirmatively declined to object' when answering 'no' to the military judge's question. We hold that this response constitutes an express waiver, obviating the need to address the issue of improper sentencing argument.") (citing *Davis*, 79 M.J. at 331–32.).

[18] 67 M.J. at 330.

[19] *Id.* at 331.

some questions that he had about the substance of the testimony.

> In light of this document, there is no question that defense counsel had advance notice of the substance of [the doctors]'s testimony, that he reviewed the expected testimony, and that he considered the impact of the stipulation on his client's case. At trial the military judge presented defense counsel with an opportunity to voice objections to the expected testimony and counsel responded that he had no objections.[20]

So too here. Before accepting Appellant's guilty pleas, the military judge discussed various provisions of his plea agreement with him to confirm his understanding and agreement. The military judge asked trial defense counsel about the factual basis of any motions covered by the motions waiver provision of the plea agreement, and trial defense counsel responded that among the motions contemplated were "some [Military Rule of Evidence] 404(b) motions due to some past NJP issues with Lance Corporal Aguero."[21] It is clear, then, that trial defense counsel had advance notice of the NJP records, had reviewed them, and had ample opportunity to consider their impact before affirmatively declining to object. We have no difficulty finding waiver under these facts.[22]

---

[20] *Id.* at 332–33.

[21] R. at 41.

[22] We mention the colloquy regarding the plea agreement to highlight trial defense counsel's advance notice and consideration of the NJP records and not to suggest our agreement with the Government's position that the "waive all motions except those that are non-waivable" provision of Appellant's plea agreement waived any objection to the NJP records during sentencing. *See United States v. Barker*, 77 M.J. 377, 381 n.6 (C.A.A.F. 2018) ("We reject the notion that a waive all waivable motions provision entered at pretrial provides the government carte blanche to introduce at sentencing information that does not conform to the rules, or to make arguments that are prohibited by the law. We decline to adopt a reading of a waive all waivable motions provision in a pretrial agreement that . . . restricts the accused ex ante from objecting to any and all *future* infirmities unrelated to the plea." (citations omitted)). While we're at it, we also disagree with the Government's position that another provision of the plea agreement—"to not object to relevant service record documents . . . on the basis of foundation, hearsay, lack of confrontation, or authenticity"—factors in the resolution of either AOE. Appellant takes issue with the NJP records on none of those bases.

We disagree with Appellant that the language at the end of R.C.M. 1001(b)(2)—"Objections not asserted are forfeited"—dictates a different result.[23] While a succinct statement in accord with the law on forfeiture, it says nothing of waiver, and we do not read from that silence that any objection to evidence offered under that Rule may never be waived, no matter how express and unequivocal.[24] We are left with nothing to correct on appeal, and our review of the entire record does not compel us to reanimate the issue pursuant to *United States v. Chin.*[25]

## B. Trial defense counsel did not provide ineffective assistance.

Appellant next asserts that should we find waiver "by failing to object, then that failure to object to facially invalid sentencing evidence that had no benefit to LCpl Aguero constitutes ineffective assistance of counsel, which prejudiced his sentence."[26] We again emphasize that trial defense counsel did not just fail to object, but affirmatively declined to object. Back to the matter now at hand, we find no deficient performance by trial defense counsel since any objection of the kind would have been overruled.

"Allegations of ineffective assistance of counsel are reviewed de novo."[27] To prevail on a claim of ineffective assistance of counsel, an appellant must first "show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel'

---

[23] Appellant's Br. at 7 n.22; Appellant's Reply Br. at 2–3.

[24] *See generally Davis*, 79 M.J. at 331 (finding waiver of objections to the military judge's instructions despite interpreting Rule for Courts-Martial 920(f)—"Failure to object to an instruction or to omission of an instruction before the members close to deliberate constitutes waiver of the objection in the absence of plain error."—to refer to forfeiture, not waiver.). We previously saw fit to hand out free advice on this topic: "[B]ecause Appellant's counsel never formally agreed to admissibility, we hold he merely forfeited rather than waived that issue. However, our superior court makes clear in its recent decision in *Davis* that this forfeiture could have easily been converted into a waiver by a simple question from the military judge, 'Defense, any objection?' followed by a 'No objection, Your Honor.' Trial defense counsel in the field would do well to remember this, especially in areas where the Joint Trial Guide calls for the military judge to inquire as such." *United States v. Sandoval*, No. 201800355, 2020 CCA LEXIS 114, *17 (N-M. Ct. Crim. App. Apr. 13, 2020) (unpublished).

[25] 75 M.J. 220 (C.A.A.F. 2016).

[26] Appellant's Br. at 6.

[27] *United States v. Palik*, 84 M.J. 284, 288 (C.A.A.F. 2024) (citing *United States v. Tippit*, 65 M.J. 69, 76 (C.A.A.F. 2007)).

guaranteed the defendant by the Sixth Amendment."[28] The appellant "must show that counsel's representation fell below an objective standard of reasonableness."[29] "Judicial scrutiny of counsel's performance must be highly deferential[,]" and we "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ."[30] Second, an appellant "must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."[31] An appellant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."[32]

Though we could just as easily resolve this on the second prong,[33] we resolve it on the first since "[f]ailure to raise a meritless argument does not constitute ineffective assistance."[34] The issue comes down to this simple matter: Whoever drafted the NJP paperwork cited Article 92, UCMJ, instead of Article

---

[28] *Strickland v. Washington,* 466 U.S. 668, 687 (1984).

[29] *Id.* at 688.

[30] *Id.* at 689.

[31] *Id.* at 687.

[32] *Id.* at 694.

[33] *See id.* at 697 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."). Considering the circumstances of the offenses of which Appellant was convicted—distributing LSD on base to another Marine and intending to do the same with cocaine before being thwarted—the negotiated sentencing limitations of the plea agreement, and the adjudged sentence, there is no reasonable probability that the result of the sentencing proceeding would have been different without the introduction of Prosecution Exhibit 5.

[34] *United States v. Napoleon,* 46 M.J. 279, 284 (C.A.A.F. 1997) (quoting *Boag v. Raines,* 769 F.2d 1341, 1344 (9th Cir. 1985)). *See also United States v. Terlep,* 57 M.J. 344, 349 (C.A.A.F. 2002) ("The failure to pursue a legal claim is not necessarily deficient conduct by counsel. If that claim is not shown to have a reasonable probability of being found meritorious as a matter of law and fact, the failure to pursue it is not error and certainly not ineffective assistance of counsel.") (citing *United States v. McConnell,* 55 M.J. 479, 481 (2001)).

134. The Government acknowledges this mistake,[35] and we readily agree. We need not linger on the fact that 8 U.S.C. § 1324(a)(1)(A) is not an order or regulation for purposes of Article 92. Appellant asks that we not only linger, but anchor there: "Because this NJP failed to comply with both the statute and the elements [of Article 92] promulgated by the President, this NJP is legally invalid and void *ab initio*."[36] Though we do not engage in direct review of the legality of NJP proceedings, [37] given that "Appellant concedes that *if it were a legally valid NJP*, the evidence would be admissible under . . . [Rule for Courts-Martial (R.C.M.)] 1001(b)(2),"[38] our assessment of the merit of an objection on that basis necessarily requires an assessment of the NJP's legality.

Appellant would have us find the NJP void *ab initio* while dispatching the rules that govern NJP *ab initio*.[39] He cannot have it both ways. We look then to Part V of the Manual for Courts-Martial, "Nonjudicial Punishment Procedure."[40] An NJP authority contemplating imposing NJP upon a Servicemember must "cause the Servicemember to be notified. The notice shall include: . . .

---

[35] Appellee's Answer at 15–16.

[36] Appellant's Br. at 10.

[37] *See United States v. Edwards*, 46 M.J. 41, 43 (C.A.A.F. 1997) ("Our review of the decision of the court below does not involve the legality of appellant's nonjudicial punishment, but only its admissibility in a subsequent court-martial. The jurisdiction of our Court does not extend to direct review of nonjudicial punishment proceedings." (citations omitted)).

[38] Appellant's Br. at 3. n.7. R.C.M. 1001(b)(2) provides in pertinent part:

> Under regulations of the Secretary concerned, trial counsel may obtain and introduce from the personnel records of the accused evidence of the accused's . . . character of prior service. Such evidence includes copies of reports reflecting the past military efficiency, conduct, performance, and history of the accused and evidence of any disciplinary actions including punishments under Article 15.

Rule for Courts-Martial, *Manual for Courts-Martial, United States* (2019 ed.) [R.C.M.] 1001(b)(2).

[39] Appellant's Reply Br. at 11 ("Appellant is not arguing non-compliance with Part V, but rather non-compliance with Part IV and the punitive article itself, in that he was found guilty and punished for an offense that categorically could not meet a charged element. That is why, contrary to the Government's argument, the Part V standard of the effect of errors should not apply here because that is not where the error lies.").

[40] *Manual for Courts-Martial*, United States (2019 ed.) [MCM], pt. V.

. (2) a statement describing the alleged offenses—including the article of the code—which the member is alleged to have committed . . . ."[41] This is where the incorrect citation to Article 92 occurred (which was repeated throughout the NJP paperwork). That aside, the statement describing the alleged offense sufficiently lays out a violation of 8 U.S.C. § 1324(a)(1)(A)(ii),[42] which is chargeable under Article 134, clause 3, as "an offense not capital." In fact, the statement describing the alleged offense contains that crucial phrase[43] despite citing the wrong article.

Appellant conceded during oral argument that he received sufficient notice of an alleged violation of the alien transportation statute, chargeable under Article 134, but nevertheless maintains that he was denied due process since his commanding officer specifically imposed punishment upon him for a violation of Article 92, and not Article 134. It is not just a matter of notice, so the argument goes, but a matter of exactly what he was punished for: "Appellant was deprived of his liberty for an offense he did not actually commit," he says.[44] But that is not what happened. Appellant received notice of, pleaded guilty to,

---

[41] *Id.* at para. 4.a.

[42] The statute provides:

Any person who—

. . . .

(ii) knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, transports, or moves or attempts to transport or move such alien within the United States by means of transportation or otherwise, in furtherance of such violation of law;

. . . .

shall be punished as provided in subparagraph (B).

[43] *Cf. United States v. Fosler*, 70 M.J. 225, 233 (C.A.A.F. 2011) ("[B]ecause an accused must be notified which of the three clauses he must defend against, to survive an R.C.M. 907 motion to dismiss, the terminal element must be set forth in the charge and specification."); MCM, pt. IV, para. 91.c.(6)(b) ("When alleging a[n Article 134] clause 3 violation, each element of the federal statute . . . must be alleged expressly or by necessary implication, and the specification must expressly allege that the conduct was 'an offense not capital.' In addition, any applicable statutes should be identified in the specification.").

[44] Appellant's Reply Br. at 10.

was found to have committed, and was punished all for the same offense: illegally transporting aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(ii).

So what is the effect of the error in mislabeling this offense as a violation of Article 92 instead of Article 134? The President prescribed a rule for that, helpfully titled, "*Effect of errors*."[45] It does not read that the NJP is void, *ipso facto*, as it must for Appellant's argument to prevail. Instead, "Failure to comply with any of the procedural provisions of Part V of this Manual"—including providing notice of the article allegedly violated—"shall not invalidate a punishment imposed under Article 15, unless the error materially prejudiced a substantial right of the Servicemember on whom the punishment was imposed."[46] The record reveals that Appellant received notice of the offense he was suspected of committing, consulted with counsel, accepted NJP, pleaded guilty, made admissions to his commanding officer, and chose not to appeal his NJP as unjust. We are unable to derive from these facts any semblance of prejudice to Appellant's substantial rights. In particular, there is no indication that he was misled in any manner.[47]

We thus find no deficient performance by Appellant's trial defense counsel since there is no reasonable probability that an objection to Prosecution Exhibit 5 on the basis that the NJP was legally invalid would have been meritorious.

---

[45] MCM, pt. V, para.1.i.

[46] *Id.*

[47] *Cf.* R.C.M. 307(d) ("*Harmless error in citation.* Error in or omission of the designation of the article of the UCMJ or other statute, law of war, or regulation violated shall not be ground for dismissal of a charge or reversal of a conviction if the error or omission did not prejudicially mislead the accused."). It is counterintuitive, and more importantly, unsupported by law or regulation, that such an error would be *per se* fatal to an NJP, but not to a charge at court-martial where the stakes are generally higher.

## III. CONCLUSION

After careful consideration of the record and appellate counsel's briefs and oral arguments, we have determined that the findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[48]

However, we note that the Entry of Judgment does not adequately summarize each specification referred to trial as required by Rule for Courts-Martial 1111(b)(1)(A) and our published opinion in *United States v. Wadaa*.[49] Although we find no prejudice, Appellant is entitled to have court-martial records that correctly reflect the content of his proceeding.[50] In accordance with Rule for Courts-Martial 1111(c)(2), we modify the Entry of Judgment and direct that it be included in the record.

The findings and sentence are **AFFIRMED**.

FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

[48] Articles 59 & 66, UCMJ.

[49] 84 M.J. 652, 655 (N-M. Ct. Crim. App. 2024).

[50] *United States v. Sutton*, 81 M.J. 677 (N-M. Ct. Crim. App. 2021); *United States v. Crumpley*, 49 M.J. 538, 539 (N-M. Ct. Crim. App. 1998).

# United States Navy–Marine Corps Court of Criminal Appeals

| UNITED STATES | NMCCA NO. 202300227 |
|---|---|
| v. | **ENTRY OF JUDGMENT** |
| **Luis A. AGUERO**<br>**Lance Corporal (E-3)**<br>**U.S. Marine Corps**<br>*Accused* | *As Modified on Appeal*<br><br>**31 October 2024** |

On 1 June 2023, the Accused was tried at Marine Corps Base Camp Pendleton, California, by a special court-martial, consisting of a military judge sitting alone. Military Judge Andrea C. Goode presided.

## FINDINGS

The following are the Accused's pleas and the Court's findings to all offenses the convening authority referred to trial:

**Charge:** **Violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a.**

> *Plea:* Guilty.
> *Finding:* Guilty.

**Specification 1:** **Wrongful possession with intent to distribute cocaine, a Schedule II controlled substance, on or about 14 November 2022.**

> *Plea:* Guilty.
> *Finding:* Guilty.

**Specification 2:** **Wrongful possession with intent to distribute lysergic acid diethylamide, a Schedule I controlled substance, on or about 14 November 2022.**

> *Plea:* Not Guilty.

*Finding:* Withdrawn and dismissed without prejudice to ripen into prejudice upon completion of appellate review in which the findings and sentence have been upheld.

**Specification 3:** **Wrongful distribution of lysergic acid diethylamide, a Schedule I controlled substance, between on or about 1 November 2022 and on or about 14 November 2022.**

*Plea:* Guilty.

*Finding:* Guilty.

**Specification 4:** **Wrongful possession of some amount of marijuana, a Schedule I controlled substance, on or about 14 November 2022.**

*Plea:* Not Guilty.

*Finding:* Withdrawn and dismissed without prejudice to ripen into prejudice upon completion of appellate review in which the findings and sentence have been upheld.

**Specification 5:** **Wrongful use of marijuana, a Schedule I controlled substance, between on or about 1 November 2022 and on or about 14 November 2022.**

*Plea:* Not Guilty.

*Finding:* Withdrawn and dismissed without prejudice to ripen into prejudice upon completion of appellate review in which the findings and sentence have been upheld.

## SENTENCE

On 1 June 2023, the military judge sentenced the Accused to the following:

**Reduction to pay grade E-1.**

**Forfeiture of $500.00 per month for three months.**

**Confinement for a total of three months, as follows:**

> *For Specification 1 of the Charge: confinement for three months.*

> *For Specification 3 of the Charge: confinement for three months.*

> The terms of confinement will run concurrently.

**A bad-conduct discharge.**



FOR THE COURT:

MARK K. JAMISON
Clerk of Court